SHANKLIN v. BROWN et al.

(Supreme Court, Appellate Division, Second Department.   March 24, 1905.)

CONTRACTS—CONSTRUCTION.

> D., having a contract to furnish 100,000 cubic yards of riprapping on
> a railroad division, contracted with defendants to perform all of the pro-
> visions of his contract with the railroad company, and that D. should be
> entitled to increase the quantity to an amount not exceeding 300,000 cubic
> yards if the amount was increased by the railroad company, provided
> necessary proportional time was given defendants to furnish the increased
> amount, and that, if a greater price could be obtained therefor, defend-
> ants should have the benefit of the proportional increase. *Held*, that
> D.'s right to require materials to the extent of 300,000 cubic yards from
> defendants was dependent on the action of the railroad company under
> its contract with D., and that neither D. nor his successors in interest
> were entitled to call on defendants to furnish materials to the extent of
> 300,000 cubic yards for use in other contracts than that entered into with
> the railroad company.

Appeal from Trial Term, Westchester County.

Action by Fred M. Shanklin against Charles A. Brown and an-
other. From a judgment in favor of defendants, and from an order
denying a motion for a new trial on the minutes, plaintiff appeals.
Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOOD-
WARD, JENKS, and HOOKER, JJ.

Philo P. Safford, for appellant.
Frederick W. Park, for respondents.

WOODWARD, J.   A concise statement of the facts, gathered
from the rather confused presentation of this case, is sufficient to
show that the learned court at Trial Term correctly disposed of it.
On the 1st day of May, 1899, one Henry O. Duerr entered into a
contract in writing with the New York Central & Hudson River Rail-
road Company to furnish and place "about 100,000 cubic yards of
stone for riprapping along the Hudson Division between Albany and
Spuyten Duyvil, more fully described and set forth in the plans pre-
pared for the same," etc.   This contract provided minutely for the
work to be done, the conditions of payment, etc., and provided for
supplemental contracts in reference to any increased work or ma-
terials which might be required, the whole to be furnished at 69
cents per cubic yard, if of the same general kind as that required in
the original contract, and a different price if the same was agreed
upon in writing before undertaking the extra work.   On the 4th day
of May, 1899, Duerr entered into a contract in writing with the de-
fendants, by the terms of which the latter undertook to perform "all
the provisions of the contract by and between the New York Central
& Hudson River Railroad, by their chief engineer, and H. O. Duerr,
dated May the first, 1899, of which a copy is hereto attached, ob-
ligatory on the party of the second part," such party being Duerr.
This contract further provided, and here is the basis of the supposed
cause of action:

"That the party of the second part may increase the quantity of this contract to an amount not to exceed three hundred thousand (300,000) cubic yards, provided necessary proportional time is given the party of the first part to furnish the increased amount, provided however that if said amount is increased by Railroad Company and a greater price can be obtained for the same, party of first part shall have benefit of same proportional increase."

That this provision is to be read and construed as a provision that Brown & Fleming would furnish the materials for the completion of the contract between Duerr and the railroad company up to the amount specified, so that there would be no question about a full performance of any demand made upon Duerr under his contract, is evident from the language already quoted, and it is made certain by the further provision of the contract that:

"In consideration of which party of the second part agrees to pay to party of first part the sum of sixty cents per cubic yard for each and every cubic yard of stone furnished by the party of first part on estimates made by the chief engineer of the New York Central and Hudson River Railroad in same manner and at same time as is provided for in contract by and between party of the second part and New York Central and Hudson River Railroad."

In other words, the contract between Duerr and Brown & Fleming was that the latter would do all of the work and furnish all of the materials which Duerr had contracted to furnish to the New York Central & Hudson River Railroad, which was, specifically, to deliver about 100,000 cubic yards of stone upon the division indicated, and beyond this Brown & Fleming agreed that Duerr might call upon them to furnish materials up to the extent of 300,000 cubic yards of stone under certain conditions, all of them depending upon the action of the railroad company under its contract with Duerr, a copy of which contract was attached, and which must be understood to limit the contract between Duerr and Brown & Fleming. The railroad company, under its contract, could not have compelled Duerr to furnish stone or materials for any work outside of the Hudson Division, or outside of the general work indicated in its plans and specifications, which entered into its contract with Duerr; and, as the contract between Duerr and Brown & Fleming was in effect a contract on the part of the latter to carry out the contract of the former with the railroad company, it cannot be held that the provision permitting Duerr to increase the amount of materials up to 300,000 cubic yards was a general option to Duerr to demand this amount of material, but as limited to the requirements of the work, for the contract was not to pay for this amount, or for any given amount, but was that Duerr would pay "sixty cents per cubic yard for each and every cubic yard of stone furnished by the party of the first part on estimates made by the Chief Engineer" of the railroad company. Obviously, when the contract between Duerr and the railroad company was completed, the contract between Duerr and Brown & Fleming was at an end, and Duerr would have no right, under this contract, to call on Brown & Fleming to furnish materials for some other contract which he had in the meantime entered into. If we are right in this construction, there is an end of this case, as the subsequent history of the controversy will plainly show.

Duerr subsequently formed a corporation known as the "Duerr Contracting Company," and assigned his contract with the railroad company to such corporation, which afterward became known as the "General Crushed Stone Company, Incorporated," the plaintiff's assignor. The plaintiff's assignor afterward entered into a contract with the railroad company on the 17th day of April, 1900, for another piece of work, and Brown & Fleming furnished the materials, amounting to about 100,000 cubic yards of crushed stone, under the same general terms as in their former contract. It does not appear, however, that this was done under that contract, or that the parties recognized it as being in force, and the present contention of the plaintiff is that the defendants, having accepted a contract from the railroad company to perform a third contract for 75 cents per cubic yard, on a contract for 100,000 cubic yards, the plaintiff, as the assignee of the original contract between Duerr and Brown & Fleming, is entitled to the $9,000 profit which would have resulted if Duerr, as the president of the Duerr Contracting Company, or its successor, had taken this third contract at 69 cents per cubic yard, and had called upon the defendants to furnish the materials at 60 cents per cubic yard, it being alleged, but not proved, that there was a conspiracy between Duerr and the defendants to prevent such a result.

We agree with the learned court at Trial Term that there was no breach of contract on the part of the defendants, and the direction of a verdict was fully justified.

The judgment and order appealed from should be affirmed, with costs. All concur.